**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 16-3303 (L), 16-3304 (Con)             Caption [use short title]

**Motion for:** a Stay of the Mandate Pending the Filing and Disposition of a Petition for Certiorari

Set forth below precise, complete statement of relief sought:

Pursuant to Fed. R. App. P. 41(d)(2), Defendant-Appellant Argentine Republic respectfully requests that this Court stay the issuance of its mandate pending the filing and disposition of Argentina's forthcoming petition for a writ of certiorari in the United States Supreme Court.

Petersen Energía v. Argentine Republic

**MOVING PARTY:** Argentine Republic    **OPPOSING PARTY:** Petersen Energía Inversora S.A.U. and Petersen Energía, S.A.U.

- [ ] Plaintiff    [✔] Defendant
- [✔] Appellant/Petitioner    [ ] Appellee/Respondent

**MOVING ATTORNEY:** Maura Barry Grinalds    **OPPOSING ATTORNEY:** Derek T. Ho

[name of attorney, with firm, address, phone number and e-mail]

Skadden, Arps, Slate, Meagher & Flom LLP

4 Times Square, New York NY 10036

(212) 735-3000; maurabarry.grinalds@skadden.com

Kellog, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.

1615 M Street, N.W., Suite 400 Washington, DC 20036

(202) 326-7900; dho@khhte.com

Court- Judge/ Agency appealed from: 15-cv-2739 (S.D.N.Y.), Judge Loretta A. Preska

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
- [✔] Yes   [ ] No (explain):_____

Opposing counsel's position on motion:
- [ ] Unopposed [✔] Opposed [ ] Don't Know

Does opposing counsel intend to file a response:
- [✔] Yes [ ] No [ ] Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? [ ] Yes [ ] No

Has this relief been previously sought in this court? [ ] Yes [ ] No

Requested return date and explanation of emergency: _____

Is oral argument on motion requested? [ ] Yes [✔] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [✔] Yes [ ] No If yes, enter date: Argued June 15, 2017

**Signature of Moving Attorney:**

/s/ Maura Barry Grinalds    **Date:** September 4, 2018   Service by: [✔] CM/ECF   [ ] Other [Attach proof of service]

**Form T-1080** (rev.12-13)

# 16-3303-cv(L)

## 16-3304-cv(Con)

# United States Court of Appeals

*for the*

# Second Circuit

PETERSEN ENERGÍA INVERSORA S.A.U. AND
PETERSEN ENERGÍA, S.A.U.
PLAINTIFFS-APPELLEES,

– v. –

ARGENTINE REPUBLIC AND YPF S.A.,
DEFENDANTS-APPELLANTS.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

## DEFENDANT-APPELLANT ARGENTINE REPUBLIC'S MOTION TO STAY ISSUANCE OF THE MANDATE PENDING FILING AND DISPOSITION OF ITS PETITION FOR WRIT OF CERTIORARI

Maura Barry Grinalds
Jonathan J. Lerner
Boris Bershteyn
Shaud G. Tavakoli
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

*Counsel for Defendant-Appellant*
*Argentine Republic*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. ii

INTRODUCTION ............................................................................1

BACKGROUND ..............................................................................5

ARGUMENT ...................................................................................7

I.   THE PETITION WILL RAISE SUBSTANTIAL QUESTIONS
     WARRANTING SUPREME COURT REVIEW ...........................................8

     A.   This Court Resolved an Exceptionally Important and Recurring
          Question Regarding the Scope of Sovereign Immunity Under
          the FSIA that Should Be Addressed by the Supreme Court.................9

     B.   This Court's Decision Contributes to a Circuit Split .........................13

     C.   This Court's Decision Deviates from Supreme Court Precedent........16

II.  GOOD CAUSE EXISTS FOR A STAY .......................................................19

CONCLUSION .................................................................................21

i

# TABLE OF AUTHORITIES

## CASES

*Abelesz v. Magyar Nemzeti Bank*,
    692 F.3d 661 (7th Cir. 2012)....................................................................19

*Adler v. Federal Republic of Nigeria*,
    107 F.3d 720 (9th Cir. 1997)....................................................................15

*Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co.*,
    138 S. Ct. 1865 (2018)............................................................................18

*Asahi Metal Industry, Co. v. Superior Court*,
    480 U.S. 102 (1987)................................................................................20

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
    813 F.3d 98 (2d Cir. 2016).....................................................................12

*Banco Nacional de Cuba v. Sabbatino*,
    376 U.S. 398 (1964)................................................................................10

*Bolivarian Republic of Venez. v. Helmerich & Payne International Drilling Co.*,
    137 S. Ct. 1312 (2017)........................................................................passim

*Books v. City of Elkhart*,
    239 F.3d 826 (7th Cir. 2001)...........................................................7, 11, 18

*Bryant v. Ford Motor Co.*,
    886 F.2d 1526 (9th Cir. 1989)....................................................................7

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003)................................................................................11

*Garb v. Republic of Pol.*,
    440 F.3d 579 (2d Cir. 2006)...........................................................5, 17, 20

*Millen Industries, Inc. v. Coordination Council for North American Affairs*,
    855 F.2d 879 (D.C. Cir. 1988) ..................................................................15

*Ministry of Defense & Support for Armed Forces of Islamic Republic of Iran v. Elahi*,
    546 U.S. 450 (2006)...............................................................................11

*Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*,
    556 U.S. 366 (2009)...............................................................................11

*Mohamad v. Palestinian Authority*,
    566 U.S. 449 (2012)...............................................................................11

*OBB Personenverkehr AG v. Sachs*,
    136 S. Ct. 390 (2015)..............................................................4, 11, 16, 18

*Permanent Mission of India to the United Nations v. City of New York*,
    551 U.S. 193 (2007)...............................................................................11

*Powerex Corp. v. Reliant Energy Services, Inc.*,
    551 U.S. 224 (2007)...............................................................................11

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
    162 F.3d 748 (2d Cir. 1998)..............................................................4, 19

*Republic of Argentina v. NML Capital, Ltd.*,
    134 S. Ct. 2250 (2014)...........................................................................11

*Republic of Austria v. Altmann*,
    541 U.S. 677 (2004)...............................................................................11

*Republic of Iraq v. Beaty*,
    556 U.S. 848 (2009)...............................................................................11

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008)...............................................................................11

*Richardson-Merrill, Inc. v. Koller*,
    472 U.S. 424 (1985)...............................................................................19

*Rong v. Liaoning Province Government*,
    452 F.3d 883 (D.C. Cir. 2006)........................................................3, 14, 15

*Rubin v. Islamic Republic of Iran*,
    138 S. Ct. 816 (2018)............................................................................10

iii

*Samantar v. Yousuf,*
  560 U.S. 305 (2010).............................................................................11

*Saudi Arabia v. Nelson,*
  507 U.S. 349 (1993)...........................................................3, 12, 16, 17

*Siderman de Blake v. Republic of Arg.,*
  965 F.2d 699 (9th Cir. 1992)...........................................3, 13, 14, 15

*Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.,*
  204 F.3d 384 (2d Cir. 2000).................................................................19

*United States v. Pete,*
  525 F.3d 844 (9th Cir. 2008).................................................................7

*USX Corp. v. Adriatic Insurance Co.,*
  345 F.3d 190 (3d Cir. 2003)................................................................15

*Verlinden B.V. v. Central Bank of Nigeria,*
  461 U.S. 480 (1983)......................................................................10, 15

## STATUTES

28 U.S.C. § 1604......................................................................................9

28 U.S.C. § 1605(a)(2).........................................................................6, 9

## RULES

Fed. R. App. P. 41(d)(2)(A)....................................................................7

Fed. R. App. P. 41(d)(2)(D)...................................................................20

## OTHER AUTHORITIES

*A New Generation of International Adjudication,*
  61 Duke L.J. 775 (2012)....................................................................12

*When Commercial Meets Sovereign: A New Paradigm for Applying the*
  *Foreign Sovereign Immunities Act in Crossover Cases,*
  52 Hous. L. Rev. 361 (2014) ........................................................12, 14

iv

Pursuant to Federal Rule of Appellate Procedure 41(d)(2), Defendant-Appellant Argentine Republic ("Argentina") respectfully moves this Court to stay the issuance of its mandate in this appeal pending the filing and disposition of Argentina's forthcoming petition for a writ of certiorari in the United States Supreme Court (the "Petition").

## **INTRODUCTION**

The claims in this case indisputably and directly arise out of Argentina's lawful expropriation of a controlling stake in its largest oil and gas company, YPF S.A. ("YPF"), through a sovereign act of Argentina's legislature. As a result, Argentina is immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), which deprives federal courts of subject matter jurisdiction over litigation challenging foreign sovereign acts. To evade this jurisdictional bar, Plaintiffs-Appellees Petersen Energía Inversora S.A.U. and Petersen Energía, S.A.U. (together, "Petersen" or "Plaintiffs") invoke the FSIA's "commercial activity" exception to sovereign immunity by challenging Argentina's alleged breach of YPF's bylaws in failing to make a tender offer for all shares of YPF before expropriating a controlling stake. This pleading tactic cannot sidestep the broad scope of sovereign immunity codified by Congress in the FSIA, which does not countenance litigation challenging direct and inextricable commercial consequences of the sovereign act of expropriation.

In denying Argentina sovereign immunity, this Court indulged Plaintiffs' recasting of their challenge against a sovereign act into a "commercial" suit—and thereby erroneously extended the FSIA's commercial activity exception to commercial acts that directly flow from, and that are inextricably intertwined with, a sovereign act of expropriation. To enable review of that decision by the Supreme Court without unduly compromising its sovereign interests, Argentina respectfully requests that this Court stay the issuance of its mandate pending the filing and disposition the forthcoming Petition. A stay is warranted for several reasons.

First, Argentina's Petition will present an exceptionally important and recurring question—whether the FSIA's commercial activity exception applies to the inextricable commercial implications of a sovereign act—that should be resolved by the Supreme Court. The principles of sovereign immunity embodied in the FSIA "recognize[ ] the 'absolute independence of every sovereign authority' and help[ ] to 'induc[e]' each nation state, as a matter of 'international comity,' to 'respect the independence and dignity of every other,' including our own." *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1319 (2017) (third alteration in original).[1] By extending the commercial activity exception to the direct commercial implications of a quintessentially

---

[1] Unless otherwise indicated, all emphasis is added and internal citations are omitted in case citations.

sovereign act, this Court's decision threatens to disrupt these sensitive interests. The Supreme Court frequently grants certiorari in cases involving the FSIA, and it has specifically noted that it has not yet addressed a case "where a claim consists of both commercial and sovereign elements." *Saudi Arabia v. Nelson*, 507 U.S. 349, 358 n.4 (1993). The case offers the Supreme Court a vehicle for resolving this vitally important issue now.

Second, Argentina's Petition will demonstrate that this Court's decision contributes to a split of authority among U.S. courts of appeals. Whereas the D.C. Circuit has held that the commercial activity exception does not apply to commercial acts stemming directly from an expropriation, *see Rong v. Liaoning Province Gov't*, 452 F.3d 883, 888-90 (D.C. Cir. 2006), the Ninth Circuit has held that it does so apply. *See Siderman de Blake v. Republic of Arg.*, 965 F.2d 699, 708-09 (9th Cir. 1992). This Court has now deepened this split by departing from the sound decisions of the D.C. Circuit.

Third, as Argentina's Petition will demonstrate, Supreme Court precedent strongly indicates that the D.C. Circuit's position on this issue is correct. The Supreme Court has held that "a state engages in commercial activity . . . where it exercises 'only those powers that can also be exercised by private citizens,' as distinct from those 'powers peculiar to sovereigns.'" *Nelson*, 507 U.S. at 360. The Supreme Court has also held that, to identify the particular conduct on which an

3

action is based for purposes of assessing immunity under the FSIA, courts should "zero[ ] in" on the "core" or "gravamen" of the suit. *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015). This Court's decision extending the commercial activity exception to the immediate commercial implications of an indisputably sovereign act of expropriation deviates from these holdings. Moreover, for the reasons noted below, this Court's decision is, at the very least, in tension with the Supreme Court's recent holding that "a federal court should carefully consider a foreign state's views about the meaning of its own laws" and "accord respectful consideration" to those views. *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co.*, 138 S. Ct. 1865, 1869, 1873 (2018).

Finally, there is good cause for a stay because Argentina would be irreparably harmed if a stay were denied. It is well-established that the FSIA confers not merely immunity from liability but also immunity from the attendant burdens of litigation. *See Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998). Thus, the harms stemming from the denial of immunity are irreparable, as "appeal from final judgment cannot repair the damage that is caused by requiring the defendant to litigate." *Id*. at 756.

Prematurely imposing litigation burdens on a foreign sovereign is especially unwarranted in light of the Supreme Court's recent holding that "a court should decide the foreign sovereign's immunity defense '[a]t the threshold' of the action"

4

to avoid "imposing increased burdens of time and expense upon the foreign nation." *Helmerich*, 137 S. Ct. at 1323-24 (alteration in original). Argentina should not be forced to incur the burdens of discovery and other litigation while it seeks a final resolution of its threshold sovereign immunity defense. Further, granting a stay will translate, through reciprocity, to reduced burdens on the United States in foreign litigation. *See Garb v. Republic of Pol.*, 440 F.3d 579, 597 n.24 (2d Cir. 2006) (noting that sovereign immunity is "a reciprocal norm that significantly insulates the United States from suits in foreign countries"). Meanwhile, Plaintiffs—who seek only money damages and waited for almost three years after Argentina's expropriation to commence suit—will suffer no cognizable prejudice from a brief stay of the mandate.

## BACKGROUND

YPF was a state-owned enterprise until 1993, when it launched its initial public offering. (A.14.) Plaintiffs alleged that the company's bylaws required that, before re-acquiring a controlling stake in YPF, Argentina would make a tender offer for all shares, to all shareholders. (*Id.*)

Between 2008 and 2011, Petersen acquired over 25% of YPF's stock wholly financed by loans, primarily from Repsol YPF S.A. ("Repsol"). (A.24-25.) To ensure repayment, Repsol and Petersen agreed, as controlling YPF shareholders, to distribute as dividends at least 90% of YPF's profits and pay an "extraordinary

5

dividend" of $850 million. (A.26.) This scheme prevented YPF from reinvesting profits to develop the country's energy reserves, exacerbating Argentina's dependence on foreign energy sources and its domestic energy crisis. (A.435-38.)

Consequently, Argentina directed the immediate and temporary seizure of YPF and, pursuant to statute duly enacted by the Argentine legislature (the "Expropriation Law"), expropriated exactly 51% of YPF's Class D shares held by Repsol that were declared to be of public interest, for a price determined by law, along with the full exercise of voting rights of the seized shares. (A.440, A.449-50.) The Expropriation Law necessarily and legally superseded the conflicting mandate in YPF's bylaws, which Plaintiffs alleged (i) required Argentina to make a tender offer for all shares before acquiring a controlling stake in YPF and (ii) precluded Argentina from voting shares acquired in alleged breach of the bylaws' requirements.

Petersen's shares were not seized, but it nonetheless sued Argentina in the district court in 2015 for allegedly breaching YPF's bylaws by effectuating the expropriation without a tender offer and voting to eliminate YPF's dividends, which purportedly caused Petersen's bankruptcy. As a foreign sovereign presumptively immune from suit under the FSIA, Argentina moved to dismiss. Petersen urged the district court to assert jurisdiction under the "commercial activity" exception to the FSIA, 28 U.S.C. § 1605(a)(2).

6

The district court denied Argentina's motion, holding that the expropriation of a majority stake in YPF <u>triggered</u> a purportedly separate commercial obligation to tender for all remaining shares. (SA.16; Op. 22, 25.) Disregarding expert testimony that the Expropriation Law preempted any such duty because a public law cannot be restricted or limited by private contract, the district court declared "I actually don't really care what the experts say." (A.538.)

On appeal, this Court affirmed. It perceived no conflict between the expropriation law and the bylaws and deemed Argentina's failure to conduct the tender offer after the expropriation to be an independent breach of contract within the commercial activity exception. (Op. 25.) This Court denied Argentina's petition for rehearing on August 30, 2018.

## ARGUMENT

A motion to stay the issuance of the mandate pending the filing of a petition for a writ of certiorari should be granted when "the certiorari petition would present a substantial question" and "there is good cause for a stay." Fed. R. App. P. 41(d)(2)(A). This standard is not demanding, *see, e.g., Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989) ("No exceptional circumstances need be shown to justify a stay [of the mandate].ced"); *see also Books v. City of Elkhart*, 239 F.3d 826, 829 (7th Cir. 2001) (granting motion to stay mandate for good cause despite "weak" argument that certiorari petition presented substantial question),

and the mandate is "often" stayed while a party seeks certiorari review. *United States v. Pete*, 525 F.3d 844, 850 (9th Cir. 2008). Indeed, this Court routinely stays issuance of its mandate where, as here, a party represents that it will seek certiorari on a substantial issue.[2] Due to the sensitive and exceptionally important interests involved (*see* Sections I(A) and II, *infra*), appellate courts commonly stay mandates in cases involving sovereign immunity under the FSIA.[3]

## I.   THE PETITION WILL RAISE SUBSTANTIAL QUESTIONS WARRANTING SUPREME COURT REVIEW

In determining whether to grant a petition for certiorari, the Supreme Court considers such factors as (i) whether the decision at issue resolved an important question that has not been, but should be, settled by the Supreme Court, (ii) whether the decision resolved an important question in a way that conflicts with a decision of another federal appellate court, or (iii) whether the decision resolved an important question in a way that conflicts with a decision of the Supreme Court.

---

[2] *See, e.g.*, *O'Donnell v. AXA Equitable Life Ins. Co.*, No. 17-1085 (2d Cir. June 7, 2018) (ECF No. 71); *Waggoner v. Barclays PLC*, No. 16-1912 (2d Cir. Feb. 28, 2018) (ECF No. 202); *In re Petrobras Sec.*, No. 16-1914 (2d Cir. Nov. 3, 2017) (ECF No. 356); *Berman v. Neo@Ogilvy LLC*, No. 14-4626 (2d Cir. Oct. 14, 2015) (ECF No. 154); *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, No. 13-797 (2d Cir. Sept. 16, 2014) (ECF No. 130).

[3] *See, e.g.*, *Peterson v. Islamic Republic of Iran*, No. 15-690 (2d Cir. Mar. 1, 2018) (ECF No. 352); *Peterson v. Islamic Republic of Iran*, No. 13-2952 (2d Cir. Oct. 29, 2014) (ECF No. 313); *Sachs v. Republic of Austria*, No. 11-15458 (9th Cir. Dec. 16, 2013) (ECF No. 61); *De Csepel v. Republic of Hung.*, No. 11-7096 (D.C. Cir. July 10, 2013) (Doc. No. 1445801); *Simon v. Republic of Iraq*, No. 06-7175 (D.C. Cir. Aug. 26, 2008) (Doc. No. 1135198); *Merrill Lynch Pierce Fenner & Smith, Inc. v. Arelna, Inc.*, No. 04-16401 (9th Cir. Oct. 3, 2006) (Dkt. Entry 108); *City of New York v. Permanent Mission of India to the United Nations*, No. 05-4260 (2d Cir. June 1, 2006) (6/1/2006 Dkt. Entry).

Sup. Ct. R. 10. Argentina's forthcoming Petition will raise substantial questions as to all three of these factors for the reasons described below.

**A.** **This Court Resolved an Exceptionally Important and Recurring Question Regarding the Scope of Sovereign Immunity Under the FSIA that Should Be Addressed by the Supreme Court**

Under the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States," subject only to limited statutory exceptions. 28 U.S.C. § 1604. The narrow "commercial activity" exception at issue in this case applies to claims "based upon . . . an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere" that "causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

Here, Petersen contends that this exception applies because its claim involves Argentina's failure to make a tender offer and exercise its voting rights in breach of YPF's bylaws—a purportedly commercial act. Even under the erroneous and evolving interpretation of the bylaws advanced by Petersen and in part adopted by this Court (*see* Op. 24-26),[4] Argentina's conduct was inextricably linked to its sovereign legislative act of expropriating a controlling stake in YPF and

---

[4] In concluding that Section 28(A) of YPF's bylaws permitted the acquisition of control by expropriation and then required Argentina to make a tender offer for the "remainder" of YPF's outstanding shares (Op. 25), this Court adopted an interpretation of the bylaws that conflicted with the unambiguous terms of the bylaws and had not been espoused by either Petersen or the district court. Although Argentina vigorously challenges that interpretation as plainly inconsistent with the text of the bylaws and the opinions of Argentina's experts, its Petition will not depend on the success of such a challenge for the reasons noted above.

immediately exercising all voting rights. Hence, even if the Court were correct that the expropriation "triggered" a new contractual obligation to tender for the remainder of YPF's shares (Op. 26), Petersen's claims are based on the immediate consequences of a quintessentially sovereign act.

Whether the FSIA's commercial activity exception applies to such inextricable commercial consequences of a sovereign act poses a vitally important and oft-recurring question. As the Supreme Court has recognized, "[a]ctions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States," *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983), and can warrant a grant of certiorari for that reason. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 407 (1964) ("We granted certiorari because the issues involved bear importantly on the conduct of the country's foreign relations and more particularly on the proper role of the Judicial Branch in this sensitive area.").

The principles of sovereign immunity embodied in the FSIA "recognize[ ] the 'absolute independence of every sovereign authority' and help[ ] to 'induc[e]' each nation state, as a matter of 'international comity,' to 'respect the independence and dignity of every other,' including our own." *Helmerich*, 137 S. Ct. at 1319. Thus, in recent years the Supreme Court has frequently granted certiorari to review

10

decisions that, as here, risked infringing upon state sovereignty.[5]  The exceptionally important interests embodied in the FSIA are heightened here, where a U.S. court asserts jurisdiction over a foreign state's quintessentially sovereign act in implementing legislation to expropriate a stake in its largest oil company to avert an escalating domestic energy crisis and ensure national energy independence.  These considerations alone warrant granting the requested stay.  *Cf. Books*, 239 F.3d at 828 (courts should consider "the Supreme Court's treatment of other cases presenting similar issues" in determining whether to stay the mandate pending filing of certiorari petition).[6]

---

[5] *See, e.g., Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018); *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312 (2017); *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390 (2015); *Republic of Arg. v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014); *Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012); *Samantar v. Yousuf*, 560 U.S. 305 (2010); *Republic of Iraq v. Beaty*, 556 U.S. 848 (2009); *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009); *Republic of Phil. v. Pimentel*, 553 U.S. 851 (2008); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007); *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193 (2007); *Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Elahi*, 546 U.S. 450 (2006); *Republic of Austria v. Altmann*, 541 U.S. 677 (2004); *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003).

[6] Because the proper and uniform application of the FSIA is of such great importance, the Supreme Court routinely solicits the views of the Solicitor General who, together with the State Department, has filed amicus briefs in connection with a significant number of petitions involving the FSIA.  *See, e.g.*, Brief of United States as Amicus Curiae, *Dole Food Co. v. Patrickson*, (01-593, 01-594), https://www.justice.gov/osg/brief/dole-v-patrickson-amicus-merits (noting that the United States "has a substantial interest in the proper construction of the [FSIA] which presents the sole basis for civil litigants to obtain jurisdiction over a foreign state in United States courts" and that the United States "has a significant stake in its correct application and has consistently participated in cases before this Court construing its terms"); Brief of United States as Amicus Curiae at 1, *Permanent Mission of India to the United Nations v. City of New York* (06-134) (recommending reversal because the lower court's interpretation of the FSIA could "encourage foreign states to assert jurisdiction . . . or to take retaliatory actions against property

*(cont'd)*

11

In addition, lawsuits like Petersen's, which challenge purportedly commercial implications of sovereign conduct under the FSIA, are common. Commentators have noted that "litigation against foreign states under foreign-sovereign-immunity legislation has become a significant category of contemporary international adjudication," with approximately 1,000 cases involving claims against foreign states pending in national courts at any given time and approximately 250 new cases filed each year. Gary Born, *A New Generation of International Adjudication*, 61 Duke L.J. 775, 823–24 (2012). A significant portion of these cases involve the FSIA's commercial activity exception—the "single most important exception to foreign state immunity." *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 106 (2d Cir. 2016).

Further, while this Court's decision deviates from certain fundamental principles adopted by the Supreme Court (*see* Section I(C), *infra*), that Court has never squarely addressed whether the FSIA's commercial activity exception applies to the direct commercial implications of a sovereign act of expropriation. Indeed, the Supreme Court has specifically noted that it has not yet addressed a case "where a claim consists of both commercial and sovereign elements." *Nelson*, 507

---

*(cont'd from previous page)*

of the United States abroad"), http://www.justice.gov/osg/briefs/2006/3mer/1ami/2006-0134.mer.ami.pdf.

U.S. at 358 n.4.  As commentators have recognized and as described further below (*see* Section I(B), *infra*), courts have struggled to fill the void left by the Supreme Court's silence on this issue, often reaching conflicting decisions.  *See, e.g.*, George K. Foster, *When Commercial Meets Sovereign: A New Paradigm for Applying the Foreign Sovereign Immunities Act in Crossover Cases*, 52 Hous. L. Rev. 361, 365 (2014) (noting that "the case law surrounding [the FSIA's commercial activity exception] has become muddled and contradictory, as courts have grappled with claims against foreign states that do not fit neatly within the statutory framework" and that "[c]ourts have had particular difficulty with cases arising from a mix of commercial and sovereign conduct").  Accordingly, Argentina's forthcoming Petition will present a substantial question warranting Supreme Court review.

### B.    This Court's Decision Contributes to a Circuit Split

This Court's decision also contributes to a split of authority among U.S. courts of appeals regarding whether the FSIA's commercial activity exception applies to the commercial implications of a sovereign act.  On the one hand, the D.C. Circuit has unequivocally held that activities that directly flow from a sovereign act of expropriation are not encompassed by the commercial activities exception, even if commercial in nature.  *See Rong*, 452 F.3d at 888-90.  On the other hand, the Ninth Circuit has held that a sovereign act of expropriation is

13

subject to the exception if it has commercial consequences.  *See Siderman*, 965 F.2d at 708-09.

In *Rong*, a Chinese province expropriated the plaintiff's shares in a company and months later transferred them to a newly formed entity at a below-market price.  452 F.3d at 886-87.  The plaintiff argued that the share transfer and related acts by the province in connection with the expropriated shares constituted commercial activity.  *Id.* at 888-89.  The D.C. Circuit disagreed.  It held that, while "seem[ingly] commercial," "all of the[] acts [relied on by the plaintiff] flow[ed]" from the expropriation—"an act that can be taken only by a sovereign."  *Id*. at 889.  The court observed that, if the plaintiff were correct, then "almost any subsequent disposition of expropriated property could allow the sovereign to be haled into a federal court under [the] FSIA," which would thwart the Act's purpose.  *Id*. at 890.

Conversely, in *Siderman*, the plaintiffs alleged that Argentina wrongfully expropriated a hotel they owned and subsequently operated it for the government's benefit, depriving them of the associated revenue stream.  965 F.2d at 709.  Despite characterizing the plaintiffs' claims as "arising out of . . . the expropriation of [their] property," *id*. at 702, the Ninth Circuit held that the claims fell within the FSIA's commercial activity exception.  *Id*. at 708-09.  The court based its holding solely on the direct commercial consequences of the expropriation—"Argentina's continuing . . . operation of the [hotel], and its receipt of profits from the [hotel's

14

management company],” which were “clearly activities ‘of a kind in which a private party might engage.’” *Id*.

The decisions in *Rong* and *Siderman* cannot be reconciled and thus represent a clear circuit split, as scholars have recognized. *See* Foster, *supra*, at 384. Nor is this inter-circuit conflict limited to two cases. *Compare, e.g.*, *Millen Indus., Inc. v. Coordination Council for N. Am. Affairs*, 855 F.2d 879, 885 (D.C. Cir. 1988) (“Even if a transaction is partly commercial, jurisdiction will not obtain if the cause of action is based on a sovereign activity.”), *with Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 725 (9th Cir. 1997) (applying the commercial activity exception to various indisputably “sovereign” acts taken by Nigeria because they were related to certain commercial acts and “the FSIA does not require that every act by the foreign state be commercial” for the exception to apply (citing *Siderman*, 965 F.2d at 709 n.10)).

Here, in extending the commercial activity exception to commercial consequences directly flowing from an expropriation, this Court has departed from the D.C. Circuit and joined the Ninth Circuit. The resulting lack of uniformity is uniquely disruptive in this context, as the purpose of the FSIA is in part to ensure “a uniform body of law in this area” “in view of the potential sensitivity of actions against foreign states” and the heightened risk of forum shopping. *Verlinden*, 461 U.S. at 489 (quoting H.R. Rep. No. 94–1487, at 32); *see also USX Corp. v. Adriatic*

15

*Ins. Co.*, 345 F.3d 190, 207 (3d Cir. 2003) ("[U]niformity in decision . . . is desirable since a disparate treatment of cases involving foreign governments may have adverse foreign relations consequences." (quoting H.R. Rep. No. 94–1487, at 13)). Argentina's forthcoming Petition will present a substantial question for this additional reason.

### C.    This Court's Decision Deviates from Supreme Court Precedent

Further, this Court's decision departs from Supreme Court precedent.   The Supreme Court has noted that the FSIA "largely codifies the so-called 'restrictive' theory of foreign sovereign immunity," under which "a state is immune from the jurisdiction of foreign courts as to its sovereign or public acts . . . , but not as to those that are private or commercial in character." *Nelson*, 507 U.S. at 359-60.  In *Nelson*, the Supreme Court explained that "a state engages in commercial activity . . . where it exercises 'only those powers that can also be exercised by private citizens,' as distinct from those 'powers peculiar to sovereigns.'"  *Id.* at 360; *accord Helmerich*, 137 S. Ct. at 1315 (indicating that the FSIA "denies immunity in cases 'arising out of a foreign state's strictly commercial acts,' but applies immunity in 'suits involving the foreign sovereign's public acts'"); *see also EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 482–83 (2d Cir. 2007) (holding that Argentina's repayment of debt owed to the International Monetary Fund ("IMF")

16

was not a commercial act under the FSIA because only sovereigns can borrow from the IMF), *cert. denied*, 552 U.S. 818 (2007).

Subsequently, in *OBB Personenverkehr AG v. Sachs*, the Supreme Court held that, to identify the particular conduct on which an action is based for purposes of assessing immunity under the FSIA, courts must "zero[ ] in" on the "core" or "gravamen" of the suit. 136 S. Ct. 390, 396 (2015). The Court cautioned against "allow[ing] plaintiffs to evade the [FSIA's] restrictions through artful pleading." *Id*.; *see also id*. at 396-97 (precluding plaintiff from "recast[ing]" its complaint to "thwart[ ] the [FSIA's] manifest purpose" (first alteration in original)).

This Court's extension of the commercial activity exception to the direct commercial implications of a sovereign act of expropriation deviates from these established principles. Argentina's legislative expropriation of a controlling stake in YPF was indisputably accomplished through "powers peculiar to sovereigns." *Nelson*, 507 U.S. at 360; *accord Garb*, 440 F.3d at 586 ("Expropriation is a decidedly sovereign-rather than commercial-activity."). And, as noted, the expropriation is indisputably intertwined with the purportedly commercial activity at issue—the alleged breach of YPF's bylaws—even if only by "triggering" the relevant contractual obligations. (In fact, the expropriation and the alleged breach are most accurately characterized as one and the same.) Because it is predicated on

17

a sovereign act, which is the *sine qua non* of the claim,[7] the alleged breach was not accomplished through "<u>only</u> those powers that can also be exercised by private citizens," *Nelson*, 507 U.S. at 360, or "<u>strictly</u> commercial acts," *Helmerich*, 137 S. Ct. at 1315, and therefore falls outside of the FSIA's commercial activity exception under the principles articulated by Supreme Court precedent.

In holding otherwise, this Court failed to "zero[ ] in" on the "gravamen" of Petersen's suit—Argentina's expropriation of YPF stock and its inextricable contractual implications—instead allowing Petersen "to evade the Act's restrictions through artful pleading." *Sachs*, 136 S. Ct. at 396. The Court's decision deviates from Supreme Court precedent for this additional reason, presenting a substantial question warranting review by certiorari.[8]

---

[7] While Petersen insists that it is not challenging the expropriation, absent that expropriation, there would have been no takeover of YPF, which was the indisputable prerequisite to any tender offer obligation under this Court's construction of the bylaws.

[8] This Court's decision is also in tension with the Supreme Court's decision in *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co.*, 138 S. Ct. 1865 (2018), which held that, "[i]n the spirit of 'international comity,' a federal court should carefully consider a foreign state's views about the meaning of its own laws" and "accord respectful consideration" to those views. *Id*. at 1869, 1873. In its decision, this Court declared that "there is . . . no statement in [Argentina's] expert's opinion that the [Expropriation Law] compelled Argentina to 'acquire <u>exactly</u> 51% ownership in YPF' and no greater ownership position." (Op. 28 (emphasis in original).) Yet, Argentina's expert submissions established that

> [t]he Republic cannot be bound by a private contractual agreement to acquire a higher number of shares than necessary in order to satisfy the public use as set forth in Law No. 26,741. The national Congress decided to declare for public use 51% of YPF shares, and no more than that percentage. . . . <u>The intervention and expropriation process therefore excluded any procedure, such as the public tender offer described in YPF's bylaws, which would force the Republic to acquire a</u>

*(cont'd)*

18

## II.   GOOD CAUSE EXISTS FOR A STAY

To determine whether there is "good cause" to stay the issuance of its mandate, this Court should balance the equities, focusing in particular on whether the movant will suffer irreparable injury if a stay is denied. *See Books*, 239 F.3d at 827-28.

This standard is readily satisfied here.  It is well-established that the FSIA confers not merely immunity from liability, but also immunity from the attendant burdens of litigation. *See Rein*, 162 F.3d at 756.  Accordingly, the deprivation of immunity inflicts irreparable harms. *See, e.g., id.* at 756 (when sovereign immunity is at stake, "appeal from final judgment cannot repair the damage that is caused by requiring the defendant to litigate").  Indeed, every appellate court to consider the issue has concluded that a denial of a motion to dismiss under the FSIA merits an immediate right of appeal under the collateral order doctrine. *See Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 387 (2d Cir. 2000); *see also Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 667 (7th Cir. 2012) (collecting cases).  The availability of this extraordinary relief reflects the recognition that, once a sovereign is forced to litigate, its right to

---

*(cont'd from previous page)*
> larger number of shares than necessary to achieve the purposes of the expropriation stated in the law.

(A.522-23.)   The Court gave no consideration, let alone "respectful consideration," to Argentina's experts on the meaning of Argentina's own laws.

19

immunity from the burdens of litigation is "irretrievably lost." *Richardson-Merrill, Inc. v. Koller*, 472 U.S. 424, 431 (1985).

Therefore, absent a stay, Argentina will be irreparably harmed by the resulting need to undertake discovery and other burdensome and potentially unnecessary litigation before its sovereign immunity defense is definitively resolved—burdens the FSIA was intended to eliminate. *See Rein*, 162 F.3d at 756. In light of these compelling interests and the need to avoid the risk of infringing upon Argentina's sovereignty, a stay is warranted. *Cf. Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 103, 115 (1987) (noting that great caution should be exercised in the assertion of jurisdiction over foreign defendants in view of "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction" as well as "the Federal Government's interest in its foreign relations policies"). A stay will also translate, through reciprocity, to reduced burdens on the United States in foreign litigation. *See Garb*, 440 F.3d at 597 n.24.

Conversely, a temporary stay will not harm Petersen, who waited for almost three years after Argentina's expropriation to commence suit and whose lawsuit is being funded by a litigation finance company. (A.32.) Absent an extension of time, Argentina's Petition is due by November 28, 2018. *See* Sup. Ct. R. 13. In the event the Petition is denied, the mandate will issue immediately and

proceedings may resume promptly in the district court. *See* Fed. R. App. P. 41(d)(2)(D). Even if Petersen could identify any harm from such a brief stay, it is decisively outweighed by the substantial and irreparable harms of infringing upon Argentina's sovereignty. Accordingly, the balance of equities clearly favors staying the mandate in this case, thereby establishing good cause.

## CONCLUSION

For the foregoing reasons, Argentina respectfully requests that this Court stay the issuance of its mandate pending the disposition of Argentina's forthcoming petition for a writ of certiorari.

Dated: New York, New York
      September 4, 2018

/s/ Maura Barry Grinalds
Maura Barry Grinalds
(MauraBarry.Grinalds@skadden.com)
Jonathan J. Lerner
(Jonathan.Lerner@skadden.com)
Boris Bershteyn
(Boris.Bershteyn@skadden.com)
Shaud G. Tavakoli
(Shaud.Tavakoli@skadden.com)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000

*Counsel for Defendant-Appellant
Argentine Republic*

21

## **CERTIFICATE OF COMPLIANCE**

1.    This motion complies with Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,190 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.    This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point.

Dated:  New York, New York
September 4, 2018        */s/ Maura Barry Grinalds*
                 Maura Barry Grinalds

                 *Counsel for Defendant-Appellant*
                 *Argentine Republic*